IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


IONE COLEMAN,

          Plaintiff,

vs.                          Case No. 09-1338-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

          Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff supplemental security income payments. The matter has been fully briefed by the parties.

## I.  General legal standards

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. _Glenn v. Shalala_, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the

1

conclusion.  The determination of whether substantial evidence

supports the Commissioner's decision is not simply a quantitative

exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it really constitutes mere conclusion.  Ray

v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court

is not to reweigh the evidence, the findings of the Commissioner

will not be mechanically accepted.  Nor will the findings be

affirmed by isolating facts and labeling them substantial

evidence, as the court must scrutinize the entire record in

determining whether the Commissioner's conclusions are rational.

Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The

court should examine the record as a whole, including whatever in

the record fairly detracts from the weight of the Commissioner's

decision and, on that basis, determine if the substantiality of

the evidence test has been met.  Glenn, 21 F.3d at 984.

     The Social Security Act provides that an individual shall be

determined to be under a disability only if the claimant can

establish that they have a physical or mental impairment expected

to result in death or last for a continuous period of twelve

months which prevents the claimant from engaging in substantial

gainful activity (SGA).  The claimant's physical or mental

impairment or impairments must be of such severity that they are

not only unable to perform their previous work but cannot,

considering their age, education, and work experience, engage in

2

any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy.
Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of
the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir.
1993). At step five, the burden shifts to the Commissioner to
show that the claimant can perform other work that exists in the
national economy. Nielson, 992 F.2d at 1120; Thompson v.
Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner
meets this burden if the decision is supported by substantial
evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will
assess the claimant's residual functional capacity (RFC). This
RFC assessment is used to evaluate the claim at both step four
and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g);
416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On March 25, 2004, administrative law judge (ALJ) Robin
Henrie issued a decision finding that plaintiff was not disabled
(Case No. 05-1062-MLB, R. at 22-32).[1] On November 29, 2005, the
district court reversed the decision of the Commissioner and
remanded the case for further hearing (Case No. 05-1062-MLB, Doc.

---

[1]The Commissioner failed to include the 1st ALJ decision in
the administrative record presented to the court in this case.
Therefore, the court has reviewed the record from the earlier
case.

4

16).

On March 29, 2007, administrative law judge (ALJ) Melvin B. Werner issued a 2nd decision (R. at 288-296). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since April 1, 2002, the alleged onset date (R. at 290). At step two, the ALJ found that plaintiff had the following severe impairments: osteoarthritic complaints of the back and legs due to obesity; hypertension without end organ damage; and affective disorder with borderline to low level intellectual functioning and possible learning deficits (R. at 290). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 291). After determining plaintiff's RFC (R. at 291), the ALJ found at step four that plaintiff is unable to perform past relevant work (R. at 295). At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 295-296). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 296).

On September 1, 2009, 2 ½ years after the 2nd ALJ decision, the Appeals Council issued a very brief order declining to assume jurisdiction in this case (R. at 280-281). Plaintiff again seeks judicial review of the Commissioner's decision.

**III. Did the ALJ err by failing to consider the opinions of Dr. Nielson?**

Plaintiff underwent a consultative examination by a clinical psychologist, Dr. Nielson, on July 9, 2002 (R. at 141-145). Dr. Nielson performed IQ tests on the plaintiff, and found that her verbal and full scale scores were just within the borderline range, while her performance score was within the lower end of the low average range (R. at 142). He found that plaintiff was capable of understanding and remembering within the low average to borderline range, and had a fair ability to maintain concentration and persistence (R. at 144). His prognosis was that "claimant presents as capable of following simple one or two step work instructions" (R. at 145).

In the 1st ALJ decision, the ALJ discussed the report of Dr. Nielson, and included the following limitation in his RFC findings:

> ...work at more than a low memory level, which means <u>the ability to understand, remember and carry out simple one or two-step instructions</u>, the option to use memory aids, and with only minimal changes in the work instructions from week to week.

(Case No. 05-1062, R. at 29, emphasis added). However, the 2nd ALJ decision makes no mention of Dr. Nielson's consultative evaluation or recommendations, and, without providing any explanation, did not limit plaintiff to only carrying out simple one or two step instructions.

The significance of this omission becomes apparent when reviewing the transcript of the October 10, 2006 hearing before

6

the ALJ.  At the hearing, the ALJ questioned the vocational

expert (VE) as follows:

> Q (by ALJ): Okay.  And there was some earlier
> discussion of a limitation to one or two-step
> occupations if in fact I find that the degree
> of mental deterioration is to that level.  Is
> that any -- contraindicative of these jobs
> that you cited?
>
> A (by VE): Yes, sir.  That would be
> considered sheltered work.  That would not
> be, generally speaking, competitive work like
> three or four step.

(R. at 827).  Later, plaintiff's attorney noted that the ALJ in

the prior decision found that Dr. Nielson was correct in limiting

plaintiff to one or two step instructions, and referenced the

testimony of the VE that this limitation would rule out all

competitive employment (R. at 828).  However, inexplicably, the

ALJ never mentioned this limitation by Dr. Nielson, and offered

no explanation for not including it in his RFC findings, even

though another ALJ had included this limitation in an earlier

decision.

     The record must demonstrate that the ALJ considered all of

the evidence, but an ALJ is not required to discuss every piece

of evidence.  Rather, in addition to discussing the evidence

supporting his decision, the ALJ also must discuss the

uncontroverted evidence he chooses not to rely upon, as well as

significantly probative evidence that he rejects.  <u>Clifton v.

Chater</u>, 79 F.3d 1007, 1009-1010 (10th Cir. 1996).  An ALJ must

evaluate every medical opinion in the record, although the weight
given to each opinion will vary according to the relationship
between the disability claimant and the medical professional.
When an ALJ rejects a treating physician's opinion, he must
articulate "specific, legitimate reasons for his decision."  An
ALJ must also consider a series of specific factors in
determining what weight to give any medical opinion.  <u>Hamlin v.
Barnhart</u>, 365 F.3d 1208, 1215 (10th Cir. 2004).  Even on issues
reserved to the Commissioner, including plaintiff's RFC and the
ultimate issue of disability, opinions from any medical source
must be carefully considered and must never be ignored.  Social
Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2-3.  It is clear
legal error to ignore a medical opinion.  <u>Victory v. Barnhart</u>,
121 Fed. Appx. 819, 825 (10th Cir. Feb. 4, 2005).

     According to SSR 96-8p:

          If the RFC assessment conflicts with an
          opinion from a medical source, the
          adjudicator must explain why the opinion was
          not adopted.

1996 WL 374184 at *7.  Furthermore, according to SSR 96-5p:

          Adjudicators must weigh medical source
          statements under the rules set out in 20 CFR
          404.1527 and 416.927, providing appropriate
          explanations for accepting or rejecting such
          opinions.

1996 WL 374183 at *5.  SSR rulings are binding on an ALJ.  20
C.F.R. § 402.35(b)(1); <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 n.9,
110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); <u>Nielson v.

<u>Sullivan</u>, 992 F.2d 1118, 1120 (10th Cir. 1993).

The ALJ clearly erred by failing to even mention Dr. Nielson's report, or his opinion that plaintiff was only capable of following one or two step work instructions. This error is even more inexcusable in light of the fact that: 1) the ALJ in the 1st decision had included this limitation, 2) the VE had testified that a person with this limitation would be limited to sheltered work and could not engage in competitive work (R. at 827), and 3) plaintiff's attorney had pointed these facts out to the ALJ at the hearing (R. at 828).

Defendant argues that the medical evidence did not support Dr. Nielson's limitation of plaintiff to one or two step instructions (Doc. 17 at 19-20). However, an ALJ's decision should be evaluated based solely on the reasons stated in the decision. <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1084 (10th Cir. 2004). A decision cannot be affirmed on the basis of appellate counsel's <u>post hoc</u> rationalizations for agency action. <u>Knipe v. Heckler</u>, 755 F.2d 141, 149 n.16 (10th Cir. 1985). A reviewing court may not create <u>post hoc</u> rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision. <u>Grogan v. Barnhart</u>, 399 F.3d 1257, 1263 (10th Cir. 2005). By considering legal or evidentiary matters not considered by the ALJ, a court risks violating the general rule against <u>post hoc</u> justification of

administrative action.  <u>Allen v. Barnhart</u>, 357 F.3d 1140, 1145
(10th Cir. 2004).  Because of the ALJ's failure to comply with
the agency's own rulings and the case law which clearly require
him to address medical opinions when they conflict with the RFC
findings, the court will not address the arguments raised by
defendant in his brief.  Furthermore, the court would note that
there is no medical opinion evidence that states that plaintiff
is not limited to simple one or two step work instructions.

**IV.  Did the ALJ err in his consideration of Dr. Andersen's
opinions that plaintiff could not work?**

The record indicates that Dr. Andersen was plaintiff's
treating physician for approximately a two year period, from
2002-2004 (R. at 187-197, 225-231, 506-566, 611-623).  In various
reports from October 29, 2002 through July 2, 2004, Dr. Andersen
opined that plaintiff could not work.  On some occasions, he
opined that plaintiff could only work part-time; on other
occasions he indicated that plaintiff could not work at all until
her blood pressure was stable (R. at 184-186, 208-215, 235-238,
528-538).  The ALJ evaluated the opinions of Dr. Andersen as
follows:

> There are multiple opinions from 2 doctors,
> one of which [Dr. Andersen] treated the
> claimant in the past. The other saw the
> claimant one time, according to his statement
> [Dr. Van Komen]. They had somewhat differing
> opinions regarding the specific ability of
> the claimant over the adjudicative period

(Exhibit B5F, p. 2; B9F, p.l; B-1OF; B12F; B19F). The opinions state for instance that the claimant could work 4 hours out of an 8 hour work day; she could attend school 4 hours out of an 8 hour workday and other more specific abilities including an ability to sit for 45 minutes at a time. Both Dr. Andersen and Dr. Komen appear to have based their opinions on the claimant's subjective complaints. However, the claimant is not a credible historian. Her statements to the medical professionals are not entirely credible. In addition, Dr. Andersen and Dr. Komen's opinions are not entirely consistent with each other. Dr. Andersen has offered several opinions that are not entirely consistent with each other. The residual functional capacities based on those statements cannot, therefore, be given controlling weight 20 CFR 416.927, and SSR 96-2p.

(R. at 293).

The ALJ asserts that Dr. Andersen based his opinions on plaintiff's subjective complaints. In the case of <u>Langley v. Barnhart</u>, 373 F.3d 1116, 1121 (10th Cir. 2004), the court held:

> The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was based only on claimant's subjective complaints and was "an act of courtesy to a patient." <u>Id</u>. The ALJ had no legal nor evidentiary basis for either of these findings. Nothing in Dr. Hjortsvang's reports indicates he relied only on claimant's subjective complaints or that his report was merely an act of courtesy. "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion.*"

McGoffin v. Barnhart, 288 F.3d 1248, 1252
(10th Cir.2002) (quotation omitted; emphasis
in original). And this court "held years ago
that an ALJ's assertion that a family doctor
naturally advocates his patient's cause is
not a good reason to reject his opinion as a
treating physician." Id. at 1253.

More recently, in the case of Victory v. Barnhart, 121 Fed. Appx.

819 (10th Cir. Feb. 4, 2005), the court held:

The ALJ's finding that Dr. Covington's
opinion was based on claimant's own
subjective report of her symptoms
impermissibly rests on his speculative,
unsupported assumption. See Langley, 373 F.3d
at 1121 (holding that ALJ may not reject a
treating physician's opinion based on
speculation). We find no support in the
record for the ALJ's conclusion. Nothing in
Dr. Covington's report indicates that he
based his opinion on claimant's subjective
complaints, and the ALJ's finding ignores all
of Dr. Covington's examinations, medical
tests, and reports. Indeed, the ALJ's
discussion of Dr. Covington omits entirely
his March 22, 2001 examination and report.
His April 3, 2001 statement might well have
been based on his recent first-hand
examination and observation of claimant
during this examination, performed less than
two weeks earlier, rather than on claimant's
subjective complaints, as the ALJ speculated.
See Morales v. Apfel, 225 F.3d 310, 317 (3d
Cir.2000) (noting that the treating
physician's opinion may "reflect expert
judgment based on a continuing observation of
the patient's condition over a prolonged
period of time").

121 Fed. Appx. at 823-824.

The ALJ does not cite to any evidence in the record to

support his assertion that Dr. Andersen based his opinions on

plaintiff's subjective complaints, and defendant fails to cite to

any evidence in his brief to support the ALJ's assertion. In fact, Dr. Andersen repeatedly indicates that he based his opinions on plaintiff's history and physical examinations of the plaintiff (R. at 236, 238, 216, 214, 212, 210, 208, 528, 529, 532-534, 536). Furthermore, Dr. Andersen stated on August 15, 2003 that "based upon objective medical, clinical, and laboratory findings," plaintiff would likely be absent from work as a result of her impairments or treatment more than 4 times a month (R. at 186). For these reasons, the court concludes that the ALJ's assertion that Dr. Andersen appeared to base his opinions on plaintiff's subjective complaints is not supported by substantial evidence.[2]

The ALJ also argued that the various opinions of Dr. Andersen and that of Dr. Van Komen were not entirely consistent. First, their opinions consistently indicate that plaintiff cannot work an 8 hour workday. Second, the ALJ did not discuss the reasons put forth by Dr. Andersen for reducing her ability to work from 4 hours a day to not being able to work at all (i.e., until her blood pressure was stabilized; R. at 208, 210, 212, 236, 238, 529). Third, even if the other reasons for discounting

---

[2]Dr. Van Komen also opined that "based upon objective medical, clinical, and laboratory findings," plaintiff would likely be absent from work as a result of the impairments or treatments more than 4 times a month (R. at 199). Again, the ALJ failed to cite to any evidence that Dr. Van Komen relied on plaintiff's subjective complaints in formulating his opinions regarding plaintiff's limitations.

the opinions of Dr. Andersen and Dr. Van Komen were valid, the court cannot speculate on whether the ALJ would have reached the same conclusion had he not erroneously concluded that the opinions of Dr. Andersen and Dr. Van Komen were based on plaintiff's subjective complaints. <u>Dickson v. Commissioner of Social Security</u>, 2009 WL 3075655 at *4 (W.D. Okla. Sept. 22, 2009).

**V.  Did the ALJ err in his hypothetical question to the vocational expert (VE)?**

The ALJ stated that his RFC findings were consistent with the mental RFC findings in the state agency assessment (R. at 295).  In that assessment, C. M. Fantz stated that plaintiff was moderately limited in 3 categories:

> #3- The ability to understand and remember detailed instructions.
>
> #5- The ability to carry out detailed instructions.
>
> #6- The ability to maintain attention and concentration for extended periods.

(R. at 599-601).  In his decision, the ALJ found that plaintiff had moderate limitations in the following 3 categories:

> #3- The ability to understand and remember detailed instructions.
>
> #6- The ability to maintain attention and concentration for extended periods.
>
> #7- The ability to perform activities within a schedule, maintain regular attendance, and

14

be punctual within customary tolerances.

(R. at 291).  The ALJ offered no explanation for the variation between the mental RFC assessment and his own RFC findings.  At the hearing, the ALJ then gave the VE a hypothetical question with moderate limitations in categories 3, 5, and 6.  This question was consistent with the mental RFC assessment, but inconsistent with the ALJ's RFC findings (R. at 825).

Testimony elicited by hypothetical questions that do not relate "with precision" all of a claimant's impairments cannot constitute substantial evidence to support the ALJ's decision. Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991); Pilcher v. Astrue, Case No. 09-2083-SAC (D. Kan. July 28, 2010).  The ALJ found that plaintiff had a moderate limitation in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances (#7), but, without explanation, the ALJ did not include that limitation in his hypothetical question to the VE.

It is not for the court to speculate as to why the ALJ's RFC findings do not match the findings of the mental RFC assessment. However, the fact is that the hypothetical question does not match "with precision" the claimant's limitations as set forth in the ALJ's RFC findings.  Furthermore, as noted earlier, when the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  The ALJ

15

offered no explanation for the conflicts between his own RFC findings and the state agency mental RFC assessment.

Defendant argues in his brief that the ALJ was not required to include specific medical findings in the RFC section, but that it was sufficient that the ALJ stated that the mental limitations together can be described as the ability to do only simple, routine, repetitive work (Doc. 17 at 23-24). However, in <u>Bowers v. Astrue</u>, 271 Fed. Appx. 731, 732 (10th Cir. March 26, 2008), the ALJ limited plaintiff to simple, repetitive and routine work. The court stated that moderate mental impairments may decrease a claimant's ability to perform even simple work. 271 Fed. Appx. at 733. Furthermore, in <u>Wiederholt v. Barnhart</u>, 121 Fed. Appx. 833, 839 (10th Cir. Feb. 8, 2005), the ALJ posed a hypothetical question that limited plaintiff to simple, unskilled work, and omitted from the hypothetical the ALJ's earlier and more specific findings that she had various mild and moderate restrictions. The court held that the relatively broad, unspecified nature of the description "simple" and "unskilled" did not adequately incorporate additional, more specific findings regarding a claimant's mental impairments, and therefore the hypothetical question was flawed. Because of the flawed hypothetical, the court found that the VE's opinion that the claimant could perform other work was therefore not substantial evidence to support the ALJ's decision.

Furthermore, SSR 96-8p states that the mental RFC assessment requires a more detailed assessment by itemizing various functions found in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF (psychiatric review technique form). 1996 WL 374184 at *4. Thus, defendant's argument that the specific mental limitations do not need to be listed in the ALJ's RFC findings is clearly without merit.

**VI. Should this case be reversed and remanded for further hearing, or reversed for an award of benefits?**

When a decision of the Commissioner is reversed, it is within the court's discretion to remand either for further administrative proceedings or for an immediate award of benefits. When the defendant has failed to satisfy their burden of proof at step five, and when there has been a long delay as a result of the defendant's erroneous disposition of the proceedings, courts can exercise their discretionary authority to remand for an immediate award of benefits. Ragland v. Shalala, 992 F.2d 1056, 1060 (10th Cir. 1993). The defendant is not entitled to adjudicate a case ad infinitum until it correctly applies the proper legal standard and gathers evidence to support its conclusion. Sisco v. United States Dept. of Health & Human Services, 10 F.3d 739, 746 (10th Cir. 1993). A key factor in remanding for further proceedings is whether it would serve a

useful purpose or would merely delay the receipt of benefits.
Harris, 821 F.2d at 545. Thus, relevant factors to consider are
the length of time the matter has been pending, and whether or
not, given the available evidence, remand for additional fact-
finding would serve any useful purpose, or would merely delay the
receipt of benefits. Salazar v. Barnhart, 468 F.3d 615, 626
(10th Cir. 2006). The decision to direct an award of benefits
should be made only when the administrative record has been fully
developed and when substantial and uncontradicted evidence in the
record as a whole indicates that the claimant is disabled and
entitled to benefits. Gilliland v. Heckler, 786 F.2d 178, 184,
185 (3rd Cir. 1986).

The first factor for the court to consider is the length of
time that the matter has been pending. Plaintiff filed her claim
for benefits on April 1, 2002. An ALJ issued a decision on March
25, 2004, finding that plaintiff was not disabled. Plaintiff
sought judicial review, and on November 29, 2005, the district
court reversed the decision of the Commissioner and remanded the
case for further hearing. On March 29, 2007, an ALJ issued a 2nd
decision, again finding that plaintiff was not disabled. It then
took the Appeals Council until September 1, 2009, 2 ½ years after
the 2nd ALJ decision, to issue a very brief decision declining to
assume jurisdiction of this case. Plaintiff has again sought
judicial review of the decision denying plaintiff disability

benefits.  This case has now been pending for over 8 years.

The second factor for the court to consider is whether or not, given the available evidence, remand for additional fact-finding would serve any useful purpose, or would merely delay the receipt of benefits.  The court should determine whether substantial and uncontradicted evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits.

The ALJ clearly erred by failing to consider the opinion of Dr. Nielson limiting plaintiff to one or two step work instructions, especially in light of the VE's testimony that such a limitation would not allow plaintiff to engage in competitive work.  The opinion of Dr. Schwartz, another consultative examiner, does indicate that plaintiff can perform simple tasks; on the other hand, Dr. Schwartz is silent on whether plaintiff is limited to one or two step instructions.  Furthermore, the VE testified that the limitations in two state agency mental RFC assessments would not prevent plaintiff from working (R. at 825-826, 599-600, 166-167).  Based on the conflicting medical opinion evidence regarding plaintiff's mental limitations, the court finds that a remand with directions for the ALJ to consider and weigh all the medical opinion evidence pertaining to plaintiff's mental limitations and their impact on their ability to work would clearly serve a useful purpose.

The ALJ also clearly erred in his assessment of the opinions

of Dr. Andersen, a treating physician, and Dr. Van Komen. However, the ALJ also had before him the opinions of Dr. Winkler who set forth physical limitations for the plaintiff that would permit plaintiff to engage in some types of employment. Based on the conflicting medical opinion evidence regarding plaintiff's physical limitations, the court finds that a remand with directions for the ALJ to properly weigh and consider the opinions of Dr. Andersen, Dr. Van Komen, and all the medical opinion evidence pertaining to plaintiff's physical limitations and their impact on her ability to work would also clearly serve a useful purpose.

When this case is remanded, the ALJ shall comply with SSR 96-8p. Specifically, if the ALJ's RFC findings conflict with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.

Finally, the court would note that plaintiff first stated in their initial brief that a remand for further hearing would serve no useful purpose, but would only delay the receipt of benefits (Doc. 12 at 22). However, later on that same page, plaintiff then stated that the case should be remanded for a new hearing before an ALJ (Doc. 12 at 22). In their reply brief, plaintiff again stated that the case should be remanded for a new hearing before an ALJ (Doc. 19 at 6). Taking into account plaintiff's contradictory positions on this issue, and the fact that a remand

for additional fact-finding and proper consideration of all the medical opinion evidence would serve a useful purpose, the court will remand the case for further hearing.  See <u>Tucker v. Barnhart</u>, 201 Fed. Appx. 617, 619, 625 (10th Cir. Oct. 19, 2006)(although the case had been pending for 9 years and remanded once previously, the court held that additional fact-finding and consideration by the ALJ was appropriate in the case).

However, in light of the fact that this case has been pending for over 8 years, the court would urge the Commissioner to give priority to this case and handle it in an expedited fashion.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 30th day of November, 2010, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge